UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LORENE B. CRATER, | No. ED CV 11-1523-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.

## PROCEEDINGS

Plaintiff filed this action on September 23, 2011, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 17, 2011, and October 27, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 2, 2012, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on January 29, 1954. [Administrative Record ("AR") at 62.] She completed two years of college [AR at 163], and has past relevant work experience as an in-home care provider and a telemarketer. [AR at 160.]

On December 21, 2005, plaintiff filed an application for Disability Insurance Benefits, alleging that she had been unable to work since October 19, 2005, due to diabetes and problems with her hearing and left leg. [AR at 55, 58.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 55.] A hearing was held on June 4, 2008, at which time plaintiff appeared without counsel and testified on her own behalf. [Id.] A vocational expert ("VE") and a medical expert also testified. [Id.] On June 27, 2008, the ALJ determined that plaintiff was not disabled. [AR at 55-61.] Since plaintiff did not appeal this decision, it became final and binding. See 20 C.F.R. § 404.905; Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985).

Thereafter, on August 6, 2009, plaintiff filed a subsequent application for Disability Insurance Benefits and an application for Supplemental Security Income payments, alleging that she has been unable to work since June 28, 2008, due to diabetes, "chronic weakness, difficulty walking, swelling in [her] left leg, memory problems, tingling[,] and numbness." [AR at 19, 133-38, 158-65.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an ALJ. [AR at 68-71, 73-83.] On November 8, 2010, a different ALJ held a hearing, at which time plaintiff appeared with counsel and again testified on her own behalf. [AR at 28-51.] A VE also testified. [AR at 44-49.] On December 10, 2010, the second ALJ determined that plaintiff was not disabled.[1] [AR at 19-24.] On July 27, 2011, the Appeals Council denied plaintiff's request for review. [AR at 1-3, 13.] This action followed.

---

[1] In so concluding, the ALJ cited to Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988), for the proposition that the principles of res judicata require an ALJ to adopt the findings from the prior decision unless there is new and material evidence relating to such findings. [AR at 23.] The Court will consider the impact of Chavez on this case in addressing plaintiff's contention below that plaintiff "proved changed circumstances" pursuant to Chavez. [Joint Stipulation ("JS") at 7.]

2

# III.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

# IV.

# THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

3

1  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in
2  substantial gainful activity, the second step requires the Commissioner to determine whether the
3  claimant has a "severe" impairment or combination of impairments significantly limiting her ability
4  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.
5  If the claimant has a "severe" impairment or combination of impairments, the third step requires
6  the Commissioner to determine whether the impairment or combination of impairments meets or
7  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,
8  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.
9  If the claimant's impairment or combination of impairments does not meet or equal an impairment
10 in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
11 sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
12 and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to
13 perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a
14 prima facie case of disability is established.  The Commissioner then bears the burden of
15 establishing that the claimant is not disabled, because she can perform other substantial gainful
16 work available in the national economy.  The determination of this issue comprises the fifth and
17 final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828
18 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since her alleged disability onset date, June 28, 2008.[2]  [AR at 21.]  At step two, the ALJ concluded that plaintiff has the severe impairments of diabetes and obesity.  [Id.]  At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing.  [AR at 22.]  The ALJ further found that plaintiff retained the residual functional

---

[2]  The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through June 30, 2011.  [AR at 21.]

capacity ("RFC")[3] to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[4], with limitations. Specifically, the ALJ determined that plaintiff: can stoop and balance occasionally; can stand or walk 2 hours in an 8-hour workday; can sit 6 hours in an 8-hour workday; cannot climb ladders; cannot work at unprotected heights; and should work in an air-conditioned environment. [Id.] At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as an in-home care provider and a telemarketer. [AR at 24.] Accordingly, the ALJ determined that plaintiff has not been disabled at any time from June 28, 2008, to December 10, 2010, the date of the decision. [Id.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly (1) concluded that plaintiff failed to prove a worsening of her condition, and (2) discounted plaintiff's credibility. [JS at 6-9, 12-15.] As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

### A. PLAINTIFF'S EVIDENCE OF HER WORSENING CONDITION

Plaintiff argues that the ALJ improperly found that Chavez applied and that plaintiff's condition had not changed since the previous decision of June 27, 2008. [JS at 6-9.] Plaintiff asserts that an examining doctor's opinions, a treating osteopathic doctor's diagnosis, and the results of a set of nerve studies reveal that her pain and limitations had worsened. [Id.]

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4] 20 C.F.R. §§ 404.1567(b) and 416.967(b) define "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." A job is light work "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." The capacity to do light work implicates that one "can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

The principles of res judicata apply to administrative decisions; however, the doctrine is not as rigidly applied to administrative proceedings as it is to judicial proceedings. See Chavez, 844 F.2d at 693; see also Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988). Social Security Acquiescence Ruling 97-4(9), adopting Chavez, applies to cases involving a subsequent disability claim with an unadjudicated period when there has been a prior claim with a final administrative decision that the claimant is not disabled. Acquiescence Ruling 97-4(9). A prior final determination of nondisability creates a presumption of continuing nondisability with respect to any subsequent unadjudicated period of alleged disability. See Lester, 81 F.3d at 827; see also Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985); Lyle v. Secretary of Health & Human Servs., 700 F.2d 566, 568-69 (9th Cir. 1983). However, the presumption may be overcome by a showing of "changed circumstances," such as new and material changes to the claimant's residual functional capacity, age, education, or work experience. See Lester, 81 F.3d at 827-28; see also Chavez, 844 F.2d at 693; Lyle, 700 F.2d at 568 n.2; Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985). In order to show "changed circumstances," the evidence must establish that the claimant suffers from an impairment that indicates a greater disability. See Chavez, 844 F.2d at 693. Accordingly, res judicata does not apply when the claimant raises an issue not considered in the previous decision, such as the existence of a new impairment, or demonstrates an increase in the severity of an impairment, either one of which adversely affects her RFC. See Lester, 81 F.3d at 827; see also Acquiescence Ruling 97-4(9) ("where the final decision by the ALJ on the prior claim, which found the claimant not disabled, contained findings of the claimant's residual functional capacity, education, and work experience, [the Social Security Administration] may not make different findings in adjudicating the subsequent disability claim unless there is new and material evidence relating to the claimant's residual functional capacity, education or work experience").

In the decision in this case, the ALJ acknowledged the prior decision and noted that the principles of res judicata created a presumption of continuing nondisability following the period previously adjudicated. [AR at 23-24.] The ALJ further noted that he was required to adopt the findings from the prior decision, which included a conclusion that plaintiff retained the ability to perform light exertion work, unless "evidence is presented to overcome this presumption." [AR

6

at 23.] The ALJ discussed some of the medical evidence submitted after the previous decision, i.e., medical records from Dr. Robert F. Steinberg, but concluded that "[plaintiff] has not met her burden of establishing a material change of circumstances" since the prior decision of June 27, 2008. [AR at 24.]

The record before the ALJ included reports of an October 18, 2010, exam performed by Dr. Steinberg. [AR at 255-57, 259-66.] Dr. Steinberg's examination involved a survey of plaintiff's past medical conditions and symptoms, a physical exam, a blood test, and an osteoarthritis test. [Id.] Based on Dr. Steinberg's examination and plaintiff's allegations of reduced sensation in her hands and feet, Dr. Steinberg diagnosed plaintiff with: "poorly controlled" diabetes; left knee pain; degenerative joint disease; obesity; diabetic neuropathy in her hands and feet; lower back pain; and gastroesophageal reflux disease. [AR at 259-60.] Dr. Steinberg opined, based on plaintiff's diabetic neuropathy and her reported tendency to "drop[] items," that plaintiff was limited in "doing repetitive reaching, handling, fingering[,] or lifting." [AR at 262.] Dr. Steinberg further opined that plaintiff: can occasionally lift and carry five to ten pounds; can never lift or carry more than ten pounds; cannot push or pull; can perform reaching with either arm only minimally; is "[s]ignificantly limited but not completely precluded" from "[g]rasping, turning, [and] twisting objects;" and is "essentially precluded" from "[u]sing fingers/hands for fine manipulations." [See AR at 262-63, 265.]

In his decision, the ALJ gave Dr. Steinberg's opinions "little weight," stating that:

> Dr. Steinberg appears to have reviewed [plaintiff]'s records and examined [plaintiff] at the request of her representative and opined [plaintiff] has multiple limitations unsupported by her records. It is unknown how long the one time consultation on October 18, 2010 was. It appears that [plaintiff]'s allegations and subjective complaints were the basis of Dr. Steiberg's [sic] opined limitations as they are not supported by objective evidence.

[AR at 23.] The ALJ concluded that plaintiff retained the RFC to perform light work and can perform her past relevant work as an in-home care provider and a telemarketer. [AR at 24.]

7

After the ALJ's decision, plaintiff submitted additional evidence to the Appeals Council, including records from plaintiff's treating osteopathic doctor[5] and the results of nerve conduction studies performed on plaintiff. [AR at 4, 269-73, 276, 279.] The Appeals Council "considered" this evidence but "found that [it did] not provide a basis for changing the [ALJ]'s decision." [AR at 1-5.]

Where a claimant submits "new and material evidence" to an Appeals Council relating "to the period on or before the date of the [ALJ] hearing decision," the Appeals Council must consider the additional evidence. 20 C.F.R. §§ 404.970(b), 416.1470(b); see Warner v. Astrue, __ F. Supp. 2d __, 2012 WL 1657739, at *5 (C.D. Cal. April 26, 2012). The Appeals Council will grant review if the Council finds "that the [ALJ's] action, finding, or conclusion is contrary to the weight of the evidence currently of record." See 20 C.F.R. §§ 404.970(b), 416.1470(b). Here, plaintiff submitted new evidence to the Appeals Council relating to the periods both before and after the ALJ's decision. Nevertheless, where the Council, as it did here, considered additional evidence but apparently discounted it and denied review, the additional evidence becomes part of the Administrative Record for the Court to analyze in light of the record as a whole. See Penny v. Sullivan, 2 F.3d 953, 957 n. 7 (9th Cir.1993) ("the Appeals Council considered this information and it became part of the record we are required to review as a whole"); Warner, 2012 WL 1657739, at **6-7 (though Appeals Councils are not required to provide reasons for discounting additional evidence, the Court must "review the ALJ's decision in light of the record as a whole, including the evidence submitted for the first time to the Appeals Council") (citing Taylor v. Commissioner of Soc. Sec., 659 F.3d 1228, 1231-32 (9th Cir. 2011)). The Court may subsequently remand upon finding that "there is a substantial likelihood the ALJ's consideration of the additional evidence submitted to the Appeals Council will materially alter the ALJ's disability analysis." Warner, 2012 WL 1657739, at *8. While defendant argues that plaintiff's medical evidence, including evidence that plaintiff submitted to the Appeals Council after the December 10, 2010, decision, fails to support that plaintiff is disabled [JS at 10-12], defendant does not dispute that the Court must review the

---

[5] Plaintiff submitted records to the Administration two days prior to the date of the ALJ's decision, but the ALJ did not discuss or reference them in his decision. [See AR at 21-24, 269-73, 276.]

evidence submitted to the Appeals Council in light of the record as a whole. See Warner, 2012 WL 1657739, at **6-7.

Since the denial of her first application for Disability Insurance Benefits on June 27, 2008, plaintiff on average received monthly treatment from at least three Arrowhead Regional Medical Center ("ARMC") doctors and other staff members between December 2008 and February 2009 [AR at 223-26, 237], monthly treatment again between May 2009 and April 2010 [AR at 213-22, 229, 242-49, 276], and treatment in June 2010 and September 2010. [AR at 270-73.] On December 22, 2008, plaintiff was diagnosed at ARMC with diabetes mellitus II and hypertension, advised to return to ARMC "for [a] breast exam in 3-4 weeks," and prescribed Glucotrol, Actos, and Vasotec. [AR at 225-26.] Plaintiff's diabetes mellitus was assessed at ARMC as "not well controlled" on January 22, 2009 [AR at 223], and as "suboptimaly [sic] controled [sic]" on August 3, 2009. [AR at 217.] On November 4, 2009, plaintiff's hypertension was assessed at ARMC as "subopt[imally] controlled," and plaintiff was prescribed Ultram. [AR at 213.] ARMC staff continued to note that plaintiff's diabetes mellitus was "not controlled" on December 11, 2009, and January 27, 2010 [AR at 246, 248], and "poor[ly] controlled" on February 25, 2010. [AR at 244.] On June 24, 2010, ARMC osteopathic doctor Stephanie White[6] noted that plaintiff's history of present illness included "dropping things" and "numbness" in both hands that had "wax[ed]/wane[d]" over a period of one month," but "[no] pain," "[no] injury," "[no] [history] of numbness," and "[no] exacerbat[ing]/allev[iating] factors." [AR at 272-73.] Dr. White diagnosed plaintiff with, inter alia, "probable carpal tunnel," diabetes mellitus 2, and osteoarthritis in her leg. [AR at 272.] Dr. White prescribed Actos and Ultram refills for plaintiff's diabetes mellitus and osteoarthritis. [Id.] For the "probable carpal tunnel" diagnosis, she recommended rest, ice, compression, elevation, and a splint. [Id.] Additionally, a set of nerve conduction studies, which appears to have been ordered by ARMC staff, was performed on February 9, 2011. [AR at 279.]

---

[6] Plaintiff's characterization of Dr. White as plaintiff's "treating osteopathic doctor" is not disputed by defendant. [See JS at 8.]

9

The interpreting physician stated that the "studies of [plaintiff's] upper extremities demonstrate[d] evidence of sensorimotor neuropathy." [Id.]

In light of the additional evidence submitted to the Appeals Council, the ALJ's conclusion that "a change in [plaintiff]'s condition has not occurred to warrant a more restrictive residual functional capacity" is not supported by substantial evidence. [See AR at 24.] In the first ALJ's decision in 2008, the ALJ stated that plaintiff "has alleged her main problem is her hearing and [her] left leg." [AR at 58.] In that decision, there is no discussion of any impairments in plaintiff's upper extremities, and the ALJ stated that plaintiff represented "she could lift 25 pounds occasionally and 10 pounds frequently." [See AR at 55-61.]

Contrary to the medical evidence discussed in the first ALJ's decision, Dr. White's diagnosis and the results of the nerve conduction studies corroborate Dr. Steinberg's opinion that plaintiff had limitations in "doing repetitive reaching, handling, fingering[,] or lifting;" show that plaintiff had "probable carpal tunnel;" and demonstrate "evidence of sensorimotor neuropathy." Thus, the evidence first presented to the Appeals Council indicates the existence of a new impairment which appears to adversely affect plaintiff's RFC. Lester, 81 F.3d at 827. Specifically, plaintiff's limitations in "reaching, handling, fingering[,] or lifting," "probable carpal tunnel" diagnosis, and "evidence of sensorimotor neuropathy" support that plaintiff has impairments in her upper extremities, an issue not considered in the first ALJ's decision. [See AR at 37, 262, 272, 279]; Lester, 81 F.3d at 828 (application of res judicata is precluded when plaintiff alleges an impairment that was not addressed by the ALJ in the prior decision); see also Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (presumption of nondisability rebutted by evidence that a previous impairment had become increasingly severe, and evidence of diagnosis of a new impairment, either of which could have been a basis for a finding of disability either independently or when aggregated with all of the claimant's pre-existing infirmities); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008) (evaluations presented after a prior nondisability determination necessarily presented new and material information not presented to the first ALJ); Schneider v. Commissioner of Soc. Sec. Admin., 223 F.3d 968 (9th Cir. 2000) (finding changed circumstances to overcome the presumption of nondisability based on changes in test scores and diagnosis). Given that plaintiff

1 provided proof of "changed circumstances," the ALJ's application of the principles of res judicata
2 was incorrect.

3 Absent a thorough examination by the ALJ of the additional medical evidence presented by
4 plaintiff, the Court cannot conclude that the ALJ properly determined that "[plaintiff] has not met her
5 burden of establishing a material change of circumstances." [AR at 24.] Dr. Steinberg's opinions,
6 when considered with Dr. White's opinions and the results of the nerve conduction studies, show
7 a substantial likelihood of materially altering the ALJ's analysis. See Taylor, 659 F.3d at 1231-32;
8 Warner, 2012 WL 1657739, at **6-7. In light of this additional medical evidence, the ALJ's
9 conclusion that plaintiff "has not met her burden of establishing a material change of
10 circumstances" is not supported by substantial evidence. Chavez, 844 F.2d at 693; Moncada, 60
11 F.3d at 523; see also Drouin, 966 F.2d at 1257. Remand is warranted.

### B. PLAINTIFF'S CREDIBILITY

Plaintiff contends that the ALJ failed to properly consider her testimony and make proper credibility findings. [JS at 12-15.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and

(5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

During the November 8, 2010, hearing, plaintiff testified, in part, that she had "been losing control of [her] hands." [AR at 33.] Plaintiff also testified that her hand condition has limited her ability to "hold[] on to things," "lift[] a lot of heavy things," unscrew bottle tops, and write for long durations without feeling "tingling" in her fingers. [AR at 36-37.] Plaintiff further testified that she takes her medication as prescribed. [AR at 39.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." [AR at 23.] The ALJ nevertheless concluded that plaintiff's statements "concerning the intensity, persistence[,] and limiting effects of these symptoms" were less than credible. [Id.] At step two, then, as the record contains no evidence of malingering by plaintiff,[7] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting her subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834).

In finding plaintiff less than credible, the ALJ appeared to rely on (1) plaintiff's testimony regarding her daily activities [AR at 22-23], (2) plaintiff's conservative treatment for her diabetes mellitus and obesity [AR at 21, 23], (3) plaintiff's failure to follow her doctors' recommendations [AR at 23], and (4) plaintiff's failure to present objective medical evidence of her alleged knee pain. [Id.]

---

[7] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

As to the first reason, the Court finds that the ALJ's summary of plaintiff's daily activities mischaracterizes plaintiff's statements regarding those activities. [See AR at 22-23, 37, 42-44.] The ALJ noted, referencing plaintiff's testimony at the November 8, 2010, hearing, that plaintiff "does her own grocery shopping, her friends drive her, and she is able to cook, clean up and do laundry. She has two small dogs that she picks up after and bathes." [AR at 22-23, 42-44.] However, in the same hearing, plaintiff also testified that she does her own grocery shopping only "sometimes," and a friend accompanies her when she does so. [AR at 42.] Next, although plaintiff testified that she cooks [AR at 43], she also testified that in the month prior to the hearing, she sustained a second degree burn after dropping a roasting pan that she was taking out of the oven. [AR at 33, 37.] Plaintiff also testified that she "*tr[ies]*" to -- not that she is always *able* to -- "clean up after [her]self," and that she only "sometimes" picks up after and bathes her small dogs. [AR at 43-44 (emphasis added).] The ALJ mischaracterized plaintiff's statements regarding plaintiff's daily activities, and the ALJ erred insofar as he relied on those mischaracterizations to find plaintiff less than credible. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence").

Moreover, the Court is not persuaded that plaintiff's ability to cook, to try to clean up after herself, to "sometimes" do grocery shopping with a friend, and to "sometimes" pick up after and bathe her dogs supports the ALJ's finding that plaintiff can perform her past relevant work, because those abilities do not necessarily translate into an ability to do activities that are "transferable to a work setting." See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

As to the second reason, the ALJ appeared to rely on plaintiff's "conservative treatment" for diabetes mellitus and obesity to discount plaintiff's credibility. [See AR at 21, 23.] Plaintiff's treatment included prescriptions for Actos, Glipizide, Glucotrol, and Metformin; referrals to diabetes mellitus education; and recommendations to diet and exercise. [AR at 172, 217-18, 221, 223, 225-27, 245, 243-46, 248.] The ALJ pointed to nothing in the record to show that any specific

treatment in addition to the treatment plaintiff was receiving are standard methods of treating diabetes mellitus or obesity. [See AR at 23.] Indeed, there is no evidence in the record from any physician that anything more could have been done that would have alleviated plaintiff's symptoms. See, e.g., Lapeirre-Gutt v. Astrue, 382 Fed.Appx. 662, 664 (9th Cir. 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

As to the third reason, the ALJ appeared to discount plaintiff's credibility because he concluded that plaintiff "has had several periods of time wherein she was not taking her medication as prescribed" and plaintiff "has been advised to diet and exercise, which she appears to have not done." [See AR at 23, 221-22, 225-26, 244-45.] Social Security Ruling[8] 82-59 provides that the "SSA may make a determination that an individual has failed to follow prescribed treatment" only where four conditions exist. SSR 82-59; 20 C.F.R. §§ 404.1530(a), 416.930(a). Among those conditions, "[t]he evidence of record [must] disclose[] that there has been refusal to follow prescribed treatment." SSR 82-59. Here, the ALJ does not specifically identify, and the Court is not aware of, any records that support that plaintiff has refused to follow prescribed treatment. [See AR at 23.] On the contrary, an Out Patient Note dated May 15, 2009, states that plaintiff had been "out of med[ication]s" for a period because her prescription "request was faxed, but no one filled [the prescription]." [AR at 222, 226.] Thus, the record does not support that plaintiff "has refused to follow prescribed treatment." See SSR 82-59. In addition, contrary to the ALJ's statement that plaintiff failed to diet and exercise as advised by her doctors, plaintiff testified at the November 8, 2010, hearing that she had "been trying" to lose weight and that she has weighed 160 pounds before, but that "sometimes it'll go down to 130 [or] 120 [pounds]." [AR at 40.] An Out Patient Note dated August 3, 2009, further indicates that plaintiff "ha[d] been eating better," i.e., "[fewer] carbohydrates" and "[more] vegetables," and that plaintiff had increased her level of

---

[8] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration ["SSA"] interpretations of the statute it administers and of its own regulations" and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

activity. [AR at 217-18.] Plaintiff's medical records and testimony therefore provide that plaintiff attempted to follow her doctors' recommendations. [See AR at 40, 217-18.] Thus, the ALJ erred insofar as he used plaintiff's failure to follow prescribed treatment as a basis to discount her credibility. [See AR at 23]; SSR 82-59. The third ground on which the ALJ apparently discounted plaintiff's credibility was not "specific, clear and convincing." See Lingenfelter, 504 F.3d at 1036 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).

As to the fourth reason, the ALJ appeared to discount plaintiff's credibility because "[t]here is no credible evidence that she has any limitations, even mild, due to her knee." [AR at 23.] While an ALJ may consider whether a lack of objective medical evidence supports the degree of limitation, this "cannot form the sole basis for discounting pain testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone." Id. at 680 (citing SSR 96-7p). Thus, even assuming the ALJ's characterization of the medical evidence is supported by substantial evidence, the ALJ may rely upon this rationale only if his other reasons for discounting plaintiff's credibility are proper. They are not. Moreover, an Out Patient Note dated November 4, 2009, provides that plaintiff had "[left] knee pain," was prescribed Ultram for that pain, and "went to [an] ER [and] was told to have severe o[steo]a[rthritis] of [her] l[eft] knee" [AR at 213-14]; and an Out Patient Note dated January 27, 2010, provides that although plaintiff's left knee pain was "stable," plaintiff still had osteoarthritis in that knee. [AR at 246.] An Out Patient Note dated February 25, 2010, provides that plaintiff was prescribed more Ultram for her "[left] knee pain" [AR at 244]; an Out Patient Note dated March 22, 2010, provides that plaintiff had "moderate" degenerative joint disease in her left knee [AR at 242]; and an Outpatient Note dated June 24, 2010, provides that plaintiff had osteoarthritis in her leg, for which she was prescribed Ultram. [AR at 272.]

The ALJ offered no legally adequate reason for discounting plaintiff's credibility. Remand is warranted on this issue.

/

/

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to properly consider (1) all the medical evidence in the record since June 28, 2008, in determining plaintiff's RFC, and (2) plaintiff's credibility. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 30, 2012

_/s/ Paul L. Abrams_
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE